UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| STUART JON SHICKS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Cause No. 1:21-CV-224-HAB |
| | ) |
| DCS, et al., | ) |
| | ) |
| Defendants. | ) |

**OPINION AND ORDER**

Laws, like sausages, cease to inspire respect in proportion as we know how they are made.

- John Godfrey Saxe[1]

The Court is not often privy to the inner machinations of litigation. The Court only sees the finished product; it doesn't see initial drafts, is unaware of inter-office intrigue, and generally is shielded from the everyday mistakes that accompany any task performed by humans. But sometimes parties, to extricate themselves from those mistakes, give the Court an all-access tour of the sausage factory. This is one such case.

After the City of Fort Wayne won dismissal of Plaintiff's claims, and on the day the dispositive motion deadline expired, the remaining Defendants ("State Defendants") moved to extend the deadline. (ECF No. 62). The Court found that State Defendants had failed to show good cause for the extension and denied the motion. (ECF No. 64). One week later, State Defendants are back, again asking for an extension of the deadline.

---

[1] This quote is often, incorrectly, attributed to 19th Century German chancellor Otto Von Bismarck. https://quoteinvestigator.com/2010/07/08/laws-sausages/.

According to the motion, the last Deputy Attorney General ("DAG") assigned to this case, who also happens to be the DAG that filed the previously denied motion for extension, has left the employ of the Attorney General's office. The currently assigned DAG has, apparently, done more work on the case in the last week than his predecessors had done in the previous eleven months. State Defendants now inform the Court that there is a draft of a dispositive motion that just needs to be finalized. State Defendants identify five different grounds for dispositive relief, including:

> (1) the statute of limitations on Plaintiff's claims expired in 2018; (2) this Court lacks subject matter jurisdiction under the *Rooker-Feldman* doctrine as it would have to set aside a state court decision that found defendants acted appropriately; (3) all claims are barred by Eleventh Amendment because DCS has not waived its immunity and the individuals are only sued in their official capacity for injunctive relief; (4) most named defendants lack personal involvement in the decision to remove the minor child, (5) and Plaintiff is a civilian and lacks prosecutorial authority to prosecute officials for criminal deprivation of life.

(ECF No. 67 at 2-3). Because the motion is in draft form, State Defendants advise that, while they previously requested a thirty-five-day extension, they now need only a fourteen-day extension.

The rule governing the determination on Plaintiff's request is Federal Rule of Civil Procedure 6(b)(1)(B), which provides that the Court may extend a deadline on a motion made after the deadline has expired "if the party has failed to act because of excusable neglect." The Court has "substantial discretion" in ruling on motions for extension of time, as a court's responsibility for managing its caseload means that it is "entitled—indeed [it] must—enforce deadlines." *Reales v. Consol. Rail Corp.*, 84 F.3d 993, 996 (7th Cir. 1996).

> We live in a world of deadlines. If we're late for the start of the game or the movie, or late for the departure of the plane or the train, things go forward without us. The practice of law is no exception. A good judge sets deadlines, and the judge has a right to assume that deadlines will be honored. The flow of cases through a busy district court is aided, not hindered, by adherence to deadlines.

*Spears v. City of Indianapolis*, 74 F.3d 153, 157 (7th Cir. 1996).

In determining whether Plaintiff has demonstrated excusable neglect, the Court must follow the standard set forth in *Pioneer Inv. Serv. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993), which requires that the Court consider "the danger of prejudice to the [defendant], the length of the delay and its potential impact on judicial proceedings, the reasons for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *See Raymond v. Ameritech Corp.*, 442 F.3d 600, 606 (7th Cir. 2006). These factors are not weighted equally: the reason for the delay is the most important factor. *Graphic Communications Int'l v. Quebecor Printing Providence, Inc.*, 270 F.3d 1, 6 (1st Cir. 2001) (citing *Lowry v. McDonnell Douglas Corp.*, 211 F.3d 457, 463 (8th Cir. 2000)).

While most of the factors may support an extension, the reason for delay does not. The Court sympathizes with the plight of the current DAG. He has taken over a case that, by all appearances, has been mis-managed by the three DAGs that preceded him. He wants to raise (probably meritorious) defenses that should have been raised at the pleading stage. He's doing the best he can with the hand he has been dealt. But none of that explains the inaction of his predecessors. It is the actions of those DAGs, who represented State Defendants up to the dispositive motion deadline, that must be evaluated. *Cuttle By and Through Stickney v. Fed. Emps. Metal Trades Council*, 623 F. Supp. 1154, 1155 n.1 (D. Maine 1985). Because no excuse whatsoever has been offered for their lack of diligence, the motion must be denied.

This is to say nothing of the effect of previous counsel's inaction on the defenses State Defendants now wish to raise. Take, for instance, the assertion of Eleventh Amendment immunity. The filing of a motion to dismiss on this ground should be reflexive for the state whenever it is sued in federal court. Yet, the DAGs handling this case ***didn't even raise it as an affirmative defense***. (ECF No. 35 at 2). Such an omission has, at least arguably, constituted waiver for nearly

3

one hundred and fifty years. *Clark v. Barnard*, 108 U.S. 436, 447 (1883) ( "The immunity from suit belonging to a state, which is respected and protected by the constitution within the limits of the judicial power of the United States, is a personal privilege which it may waive at pleasure; so that in a suit, otherwise well brought, in which a state had sufficient interest to entitle it to become a party defendant, its appearance in a court of the United States would be a voluntary submission to its jurisdiction."). At the very least, State Defendants have allowed this case to linger for much longer than apparently necessary.

But it's not all bad news for State Defendants. One of their proposed defenses, the *Rooker-Feldman* doctrine, implicates this Court's subject matter jurisdiction. *Long v. Shorebank Development Corp.*, 182 F.3d 548, 554 (7th Cir. 1999). Objections to subject matter jurisdiction may be raised at any time, even after a party has lost on the merits and even after a party has acknowledged the court's jurisdiction. *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 434 (2011). So even though State Defendants have blown their deadline through sheer inaction, the Court cannot bar them from raising *Rooker-Feldman* or any other subject matter jurisdiction defenses.

For these reasons, Defendants' Motion for Leave to File a Belated Dispositive Motion (ECF No. 67) is DENIED.

SO ORDERED on May 12, 2022.

    s/ Holly A. Brady
JUDGE HOLLY A. BRADY
UNITED STATES DISTRICT COURT